# IN THE COURT OF APPEALS OF IOWA

No. 18-1189
Filed March 20, 2019

**BECKY JANE TRESSEL,**
    Plaintiff-Appellee,

**vs.**

**BRANDON R. KUEHL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

A father appeals the district court's order modifying the physical care provisions of a custody decree concerning his minor child. **AFFIRMED.**

Jennifer M. Olsen of Olsen Law Firm, Davenport, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Becky Tressel and Brandon Kuehl are the parents of one child, O.J.K., born in 2015. Becky and Brandon never married and were in a relationship until approximately five months after O.J.K.'s birth. On October 3, 2016, the court entered a decree awarding both parties joint legal custody and shared physical care of O.J.K. The court noted Becky and Brandon's troubled relationship and Becky's intrusion on Brandon's parenting time. The court expressed its concern with Becky's interference, which was "often over minor and somewhat orchestrated reasons," including constantly texting Brandon and needlessly involving the police without a reasonable basis. Further, the court was concerned about Becky's denial of visitation. The court expressed its hope that the situation would change and found that joint legal custody and shared physical care was in O.J.K.'s best interests. The court ordered Brandon to pay child support and required the parent relinquishing custody to provide transportation to the other parent's residence.

On October 26, Becky and Brandon entered into a stipulation modifying the decree as to the days they would have custody in order to work better for the parties' schedules. Further, the parties agreed to deviate from the guideline amount of child support and that, going forward, Brandon would have no support obligation. The stipulation also required Brandon's name be added as an emergency contact at O.J.K.'s daycare and preschool. The district court approved the parties' stipulation the same day.

On February 10, 2017, Becky filed a petition for relief from domestic abuse against Brandon based on an incident which occurred in December 2016. She alleged that during a custody exchange at Brandon's house, Brandon sexually

assaulted her. The court granted a temporary protective order, halting Brandon's visitation with, and custody of, O.J.K. On February 22, 2017, the district court resumed visitation as previously ordered and required all visitation exchanges to occur at Brandon's mother's house. On March 21, the court entered a protective order by consent agreement, which continued the custody and visitation arrangement as previously ordered. For the incident, Brandon was arrested, ultimately pled guilty, and was granted a deferred judgment to a charge of assault causing bodily injury. Based upon the assault, the Iowa Department of Human Services (DHS) initially returned a founded child-abuse assessment against Brandon for denial of critical care. However, DHS subsequently modified the finding from founded and placement on the child-abuse registry to confirmed without placement on the registry.

In July, Becky filed a custody modification petition. She cited Brandon's assault conviction and the parties' inability to co-parent as substantial and material changes of circumstances to justify modification. She requested physical care of O.J.K., child support, and attorney fees. Brandon denied Becky's application, stating that Becky was the party to blame for their inability to co-parent. He requested either the court deny Becky's application or, if the court determined there was a change of circumstances justifying a custody modification, physical care be awarded to him. He also requested Becky pay child support and attorney fees. The court held a trial in early February 2018. In March, Becky moved to reopen the evidence to allow evidence of Brandon's recent arrest for operating while intoxicated (OWI) to be added to the record. Becky argued that the outcome of this arrest could potentially affect custody and visitation, as Brandon may be

incarcerated and his driving privileges suspended. On April 19, the court filed its ruling on the modification petition, finding a substantial change in circumstances had occurred to support modification and found Becky to be the superior parent.[1] Based upon these findings, the court continued joint legal custody and awarded Becky physical care. Brandon appeals the modification, contending the district court erred in finding a substantial change of circumstances warranting modification of physical care and that Becky could provide superior care. Both parties request appellate attorney fees.

We review petitions to modify custody de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "Although we make our own findings of fact, 'when considering the credibility of witnesses the court gives weight to the findings of the trial court' even though we are not bound by them." *Id.* (quoting *In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989)). The best interests of the child is our primary consideration. Iowa R. App. P. 6.904(3)(o). We must consider and "base our decision primarily on the particular circumstances of the parties," and "[p]rior cases have little precedential value." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002).

In order to modify physical care,

the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed

---

[1] The court scheduled a hearing on Becky's request to reopen the evidence for April 20, but filed its ruling on the 19th. There is nothing in the court's ruling that shows that it took Brandon's OWI arrest into consideration. Therefore, our consideration of the case will exclude the arrest. We also note the court subsequently amended and enlarged its ruling in response to Becky's motion. Among other things, the court provided more specific designations regarding visitation and awarded Becky attorney fees.

circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). This places a heavy burden upon the parent requesting the modification as "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.* (quoting *Frederici*, 338 N.W.2d at 158). When determining physical care, our goal "is to place the [child] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Quality interaction "does not occur solely in situations involving joint physical care." *Id.*

First, no party contests the court's award of joint legal custody of O.J.K. With regard to the issue of physical care, on our review of the record, we agree with the district court that both parents love O.J.K. and O.J.K. loves both parents. However, we also agree that Brandon and Becky have a tumultuous relationship, to say the least. While the court in the original custody order acknowledged the poor relationship between Brandon and Becky, it also hoped that shared physical care would work and "that the parties [could] mature in their dealing with each other for the sake of O.J.K." Both parties seem to agree that joint physical care does not work in this case and the record is replete with evidence that the court's hopes did not come to fruition. Instead the relationship has progressively deteriorated to the point where Brandon and Becky are restricted by court order from communicating with one another. First, Brandon was arrested and pled guilty to assaulting Becky while in the presence of the child. While Brandon spends much of his appellate

brief accusing Becky of lying and making false accusations regarding the incident in question, this appeal is not a relitigation of the criminal case against him. The facts are he was convicted of the assault, DHS investigated the allegation, and subsequently returned a confirmed child-abuse assessment against Brandon for denial of critical care based upon the assault. Further, there is now a criminal protective order in place between Brandon and Becky as a result of his conviction, which does not expire until 2022.

Based on circumstances that have developed since the entry of the original decree, we find the district court's earlier "confidence in these parties' ability to communicate in the best interests of the [child] under a joint physical care arrangement was misplaced." *See In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016). The parents' inflexibility and use of the child as a means to either get back at the other or for leverage in order to gain something has resulted in issues during both visitation and medical appointments which have affected O.J.K. Both parents are quick to blame the other whenever problems arise and their inability to work together has led to several filings for contempt against each other. There is nothing in the record which indicates that the animosity between Brandon and Becky will dissipate or even lessen in the future. Accordingly, we agree with the district court and conclude there has been a substantial and material change in circumstances not contemplated by the court, which is more or less permanent and relates to the welfare of the child. "[T]he shared physical care provisions in this case have not evolved as envisioned and [O.J.K] will benefit from a modification that designates a primary physical caregiver." *See id.*

The question then "becomes whether [Becky] showed [s]he can render superior care." *See In re Marriage of Mayfield*, 577 N.W.2d 872, 874 (Iowa Ct. App. 1998). Although Becky is not blameless in the failure of the shared physical care arrangement, based upon our review of the record, we agree with the district court that Becky proved she is better suited than Brandon to minister to O.J.K.'s needs. We therefore affirm the district court's modification of physical care. We, like the district court, are concerned for the child as the result of the parents' behavior toward one another. Both must learn to set aside their differences and act in the best interest of O.J.K. Further, the award of "physical care of [O.J.K.] to [Becky] does not deprive [Brandon] of his '[r]ights and responsibilities as joint legal custodian . . . to equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.'" *See Harris*, 877 N.W.2d at 444 (quoting Iowa Code § 598.41(5)(b)).

Both parties request an award of appellate attorney fees. Fees "are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Under the circumstances of this case, we award Becky $5000 in appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED.**