IN THE COURT OF APPEALS OF IOWA
No. 24-1597
Filed May 7, 2025

**IN RE THE MARRIAGE OF HEATHER R. GUNSON
AND NATHAN T. GUNSON**

**Upon the Petition of**
**HEATHER R. GUNSON,**
        Petitioner-Appellee,

**And Concerning**
**NATHAN T. GUNSON,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        Nathan Gunson appeals the district court's denial of his petition to modify the divorce decree dissolving his marriage with Heather Gunson. **REVERSED AND REMANDED WITH INSTRUCTIONS.**


        Stephen Babe of Cordell Law, LLP, Des Moines, for appellant.

        Ande Skinner and Kelly Ramsey of Ramsey Law, P.L.C., West Des Moines, for appellee.


        Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

Nathan Gunson appeals the district court's denial of his petition to modify the August 2023 divorce decree dissolving his marriage with Heather Gunson. He argues the district court erred in (1) failing to sever shared physical care and award Nathan physical care, (2) failing to set child support and uncovered medical costs in accordance with Nathan's physical care status, (3) awarding Heather trial attorney fees, and (4) failing to award Nathan trial attorney fees. Nathan also requests appellate attorney fees.

Finding a substantial change in circumstances, we reverse the district court's denial of Nathan's petition, modify the custody order to award him physical care of the children, and remand to the district court for recalculation of child support and uncovered medical costs, determination of visitation schedule, and entry of an order consistent with this opinion. We reverse the district court's award of trial attorney fees to Heather and award neither party appellate attorney fees.

## I. Background Facts and Proceedings

Heather and Nathan divorced in August 2023, with the district court wholly adopting their stipulated agreement. The decree provided that Heather and Nathan would enjoy joint legal custody and shared physical care of their two children, aged nine years old and seven years old at the time of the modification trial in July 2024. The stipulation recognized that Heather and Nathan both lived in Polk County and did not dictate that the children enroll in any specific schools or school district. Following a twenty-four-month property-equalization offset, the parties stipulated that Nathan would pay $233.26 per month in child support. It was also stipulated that Nathan would maintain health insurance for the children

through his employer. Any uncovered health expenses would be split 60/40 between Nathan and Heather, respectively.

The children have attended an elementary school in the Saydel Community School District since the entry of the decree. Nathan's home is about three miles away from the school. At the time of the decree, Heather owned a home in Des Moines. She later sold her Des Moines home on March 5, 2024. Heather testified that she was having issues paying her mortgage on time, was at risk of foreclosure, and suggested that moving was necessary to maintain a stable home for her and the children. Less than a month before the sale of her Des Moines home, Heather contacted Nathan for the purpose of having him sign the deed for the sale. Later that month Heather moved to Webster City to live with her romantic partner, Derek Rice. The deed to that home listed Rice, Becky Rice, and Trevor Rice as the owners. Heather is not on the mortgage, due to her poor credit score, or deed, for unknown reasons, but testified she is in the process of getting her name added to the deed.

In April, Nathan filed a petition for modification of the divorce decree, alleging a substantial and material change in circumstance, largely due to Heather's move. Nathan requested he be awarded physical care subject to Heather's reasonable parenting time, as well as that he be awarded child support, unpaid medical costs, and attorney fees.

Following a trial on Nathan's petition, the district court denied Nathan's petition and awarded Heather $3000 in trial attorney fees. Nathan now appeals.

## II. Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity," and we review de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted).

## III. Discussion

### A. Physical Care

Nathan first argues "the district court erred when it entered its order dismissing [his] petition for modification that failed to sever shared physical care and to award primary physical care to Nathan."

Nathan must first prove there has been a substantial change in circumstances. *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). As the parent seeking modification, Nathan bears a "heavy burden" of proving "that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The new "circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary." *Id.*

Iowa Code section 598.21D (2024) gives the district court discretion to decide whether a move exceeding 150 miles qualifies as a substantial change in circumstances:

If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.

But "section 598.21D is permissive" and our court has found a substantial change triggered by moves of much fewer than 150 miles, particularly in cases with existing shared-physical-care arrangements. *In re Marriage of Lydolph*, No. 20-0679, 2021 WL 2453050, at *3 (Iowa Ct. App. June 16, 2021). We have previously held that a shared-care "arrangement is not sustainable if the parents live nearly one and one-half hours apart." *In re Marriage of Vesey*, No. 18-1707, 2019 WL 3317910, at *3 (Iowa Ct. App. July 24, 2019).

Even if a change in circumstances is material and substantial, a modification of physical care must be in the children's best interests. *Id.* The parent requesting physical care must show they are "better able to minister effectively to the well-being of the children." *Id.* "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). When assessing which parent will provide superior care, "we look not only at [the petitioner's] parenting ability, but also at the fact that the current joint physical care arrangement is not in [the child]'s interest." *Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002).

We find little question here that there has been a material and substantial change in circumstances triggered by Heather's move to Webster City. Iowa Code section 598.21D is inapplicable as it contemplates relocation by the physical care parent as grounds to modify a child custody order. The statute expressly excludes

shared physical care parent relocation from the conditions precedent for the court's application of the statute.  *See id.*  Since Nathan and Heather enjoy shared physical care, a move of much fewer than 150 miles could materially and substantially change the children's lives.  With the children spending around two and a half hours on the road every school day when they are in Heather's care, we find this to be disruptive to the children's lives in a way that will only increase as they become older and more active in extracurriculars and other activities outside school.  Currently the children, conservatively, may be required to wake up as early as 6:00 a.m. and go to sleep well after 8:30 p.m. to accommodate their daily travel schedule with Heather.

And while inclement weather is always a risk when commuting through rural Iowa roadways, that risk will increase exponentially due to the large distance between Heather and the children's school district and the frequency which her and the children will be required traverse that route.  Weather that would not warrant cancelling or delaying school for residents of the district could place a much greater risk on travelers arriving from over seventy miles away.  Additionally, the slinky effect resulting from preparing for school in the mornings before a nearly one-and-a-half-hour drive will make morning planning difficult and unpredictable at times.  So we must find that Heather's move created a material and substantial change in circumstances.

We must next determine which parent will provide superior care.  We begin by noting the district court's factual findings in which it "[did] not find Nathan's testimony about Heather encouraging the children to be secretive around their father credible" and that "the 'evidence' concerning" the "alleged incident of sexual

abuse" by a ten-year-old cousin was not "probative or outcome determinative." The available record supports the district court's fact findings in these respects. Both parents' arguments relating to those points are solely supported by their respective self-serving testimonies. Nathan criticizes Heather's response to the reported sexual abuse incident, wherein the younger child reported to Heather that the cousin had "kissed her on her privates." Heather testified that she immediately informed Nathan, spoke with the child about what occurred, and has since kept the child away from that cousin. Nathan argues that Heather failed to do "any investigative work or try to find out what exactly transpired" and that he was the one that contacted the Iowa Department of Health and Human Services and the Clive Police Department to report the alleged conduct. But the results of the investigation, if any, are unknown, and we are loath to penalize Heather for her response to an unfounded incident of abuse—especially when it appears that she promptly informed Nathan and indicated support for the younger child and any further investigation.

Likewise, the evidence supporting Nathan's allegations of Heather's secrecy is his own testimony. During trial he testified that the children have told him that Heather instructed them to not inform him of her move. And even if true, this isolated incident does not suggest that Heather has a tendency to sabotage Nathan's parental role. In our view, these claims do not move the needle in his direction.

Yet the trial record leaves a hazy and unclear picture of Heather's long-term housing situation. Nathan points out that Heather's name is not on the deed of the new home in which she lives, and she testified that she is not "on the mortgage of

the home" either. The deed shows ownership being in the name of Rice and two people Nathan believed to be "related to [Rice] in some way." There is no evidence outside of Heather's testimony of her attempts to "have a deed prepared to include [her] on the deed to that property." There is no evidence of a lease agreement. Based on the record, Heather's only interest in the home appears to be through her romantic relationship to Rice. Awarding physical care to Heather would require removing the children from their current school district to place them in the Webster City school district. We are hesitant to uproot the children from their stable living conditions in Des Moines when it is unclear the extent to which Heather intends to root herself in Webster City. And we are not encouraged by Heather's total silence on this issue in her brief.

Lastly, the children are by all accounts well-adjusted and performing well in Saydel Community School District. The district court found that "[b]oth children do well in school," and the older child is actively involved in extracurricular sports. Nathan lives less than ten minutes away from the children's school, and the children's paternal grandmother also lives in the district. The recommendation provided by the child and family reporter at the time of the dissolution advised that the children "should remain in their home school in the Saydel District," and that they "should *not* move to Sioux Center," which was where Heather lived prior to moving to Des Moines.

Considering all the above circumstances, we believe placing the children in Nathan's physical care will be in their best interests and put them in the best position for the future. To be clear, Heather and Nathan are both good parents and their coparenting post-divorce has been generally amicable. But the

geographic distance between the parties is too large for the current custody plan to work in the children's benefit. Thus, we are forced to select a single parent for physical care.

Accordingly, we remand to the district court for entry of an order consistent with this opinion, including a visitation schedule and reallocation of child support and uncovered medical costs.

### B. Attorney Fees

The district court awarded Heather $3000 in attorney fees. Nathan requests reversal of that award and that he be awarded $7500 in trial attorney fees and reasonable appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *Lydolph*, 2021 WL 2453050, at *5. When considering appellate attorney fees, "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision." *Id.* Considering the above factors, including the disparity in the parties' incomes and Nathan's success on appeal, we reverse the district court's award of trial attorney fees to Heather pursuant to Iowa Code section 598.36. We decline to award either party appellate attorney fees.

### IV. Conclusion

In summary, we find that Heather's move caused a material and substantial change in circumstances. We accordingly reverse the district court's denial of Nathan's petition, modify the custody order to award him physical care of the children, and remand to the district court for a determination of Heather's visitation

schedule, recalculation of child support and uncovered medical costs, and entry of an order consistent with this opinion.

We reverse the district court's award of trial attorney fees to Heather and award neither party appellate attorney fees.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**